UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

           v.                                  Crim. No. 2:12-cr-12-4

Melvin Hill

## REPORT AND RECOMMENDATION
(Docs. 250, 251)

Melvin Hill, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in the United States District Court for the District of Vermont. (Docs. 250, 251.)[1] Hill was convicted following his plea of guilty to one count of conspiracy to distribute 28 grams or more of cocaine base. (Docs. 116, 166, 203.) On February 4, 2013, United States District Judge William K. Sessions III sentenced Hill to a term of imprisonment of 70 months, to be followed by a four-year term of supervised release. (Doc. 165.)

Hill filed his § 2255 Motion on January 28, 2014, claiming ineffective assistance of counsel, "perjury of the grand jury," Fourth and Fifth Amendment violations, and

---

[1] Hill's Motion consists of two documents: (1) a completed Form AO 243 ("Motion Under 28 U.S.C. § 2255") (Doc. 250), and (2) an eight-page "Motion to Vacate Sentence" under § 2255 and "Alternative Petition" for relief under § 2241 and for writs of *coram nobis* and *audita querela* (Doc. 251). I treat both documents together as a single Motion under § 2255. Hill's Motion challenges the imposition of his sentence rather than the execution, so § 2241 is not implicated. *See Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997) (noting that a challenge to the legality of the imposition of a sentence is brought under § 2255, whereas a challenge to execution is brought under § 2241). The writs of *audita querela* and *coram nobis* are not available because, as a federal prisoner challenging the legality of his conviction, the relief that Hill seeks is covered by § 2255. *Legrano v. United States*, 513 F. App'x 6, 7 (2d Cir. 2013).

prosecutorial misconduct.  Hill requests the Court vacate his conviction.  He also requests

a "proper proceeding to verify" his claims.  (Doc. 251 at 8.)  The government asserts that

no hearing is necessary, and opposes Hill's Motions.  (Doc. 264.)  Hill filed a reply on

June 2, 2014.  (Doc. 266.)  For the reasons explained below, I conclude that Hill's claims

fail and thus recommend that his § 2255 Motions (Docs. 250, 251) be DENIED.

### Factual and Procedural Background

At the outset, I note that all of Hill's factual assertions as described below appear

in one or both of his Motions (Docs. 250, 251).  Although neither document is sworn,

both documents contain declarations of the form contemplated by 28 U.S.C. § 1746.  (*See*

Doc. 250 at 11 ("I declare (or certify, verify, or state) under penalty of perjury that the

foregoing is true and correct . . . ."); Doc. 251 at 8 ("I declare under penalty of perjury

that the foregoing is correct and true . . . .").)  Additional facts (sometimes conflicting

with Hill's factual assertions) are drawn from the Presentence Report ("PSR") and other

materials in the record.[2]

## I.   Offense Conduct, Superseding Indictment, and Plea

On February 13, 2012, Detective Daniel Merchand and other members of law

enforcement arrested Melvin Hill at the Anchorage Inn in South Burlington, Vermont.

Hill asserts that he was unlawfully detained and questioned at that time, in violation of

the Fourth and Fifth Amendments.  (Doc. 250 at 7.)  According to Hill, law enforcement

found no illegal items described by the warrant on his person or in his room.  (Doc. 251

---

[2] Notably, at the February 4, 2013 sentencing, Hill was asked if he had reviewed the PSR and whether it contained any factual errors, and he replied that he had reviewed the PSR and that he did not see any factual mistakes.  (Doc. 202 at 2:9–25.)

at 5.)  Also according to Hill, he made incriminating statements, but those statements were untrue because he was under the influence of drugs and alcohol and "felt at that time that I might receive physical harm if I did not compromise." (*Id.* at 6.)  Hill states that he was in Vermont to be reunited with his biological brother, William Parker, and that he (Hill) had nothing to do with any conspiracy. (*Id.* at 7–8.)

According to the PSR, the arresting officers found Hill in possession of 4.7 grams of powder cocaine, 4.9 grams of crack cocaine, and $2,200 in cash. (PSR ¶ 25.)  During the arrest, Hill told law enforcement that he would cooperate.  He was released after processing, with a promise to meet officers the next day to continue his cooperation.  He did not appear at the meeting, however, and did not answer officers' phone calls.

On April 19, 2012, the grand jury returned a First Superseding Indictment charging Hill and others with conspiring to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and a warrant was issued for Hill's arrest. (Doc. 14.)  Hill now asserts that one of the witnesses that testified before the grand jury perjured herself.  Specifically, Hill asserts that the witness had previously stated to law enforcement personnel that Hill had nothing to do with the alleged conspiracy. (Doc. 251 at 4.)  Hill, who is African-American, also asserts that law enforcement did not arrest or prosecute certain white individuals who Hill maintains were involved in the conspiracy.

On May 7, 2012, law enforcement arrested Hill again.  He was again found in possession of cocaine base and cocaine powder, as well as a digital scale and a beverage container with a hidden compartment. (PSR ¶ 31.)  He was arraigned the next day. (Doc.

3

26.)  Attorney Gregory Glennon was appointed to represent Hill pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  The defense filed no motions to suppress evidence. Additional facts regarding Attorney Glennon's representation are set forth in more detail below.

In September 2012, Hill executed a written plea agreement.  (Doc. 103.)  On October 2, 2012, he appeared before the District Court to enter a plea of guilty to the conspiracy count against him.  (Docs. 116, 203.)  The Court engaged in the complete plea colloquy required by Fed. R. Crim. P. 11 with Hill, reviewing the nature of the conspiracy charge, Hill's constitutional rights, the substance of the plea agreement, and certain issues regarding sentencing.  The government recited the factual basis for the plea.  The Court found that the plea of guilty was made voluntarily and competently by the defendant, with full knowledge and understanding of the charge.  The Court accepted the plea, ordered a presentence report, and set a date for sentencing.  (Doc. 203 at 21.)

## II.    Sentencing

In January 2013, the United States Probation Office prepared the PSR regarding Hill.  The PSR concluded that Hill's total offense level was 23 and that his criminal history category was V, for a guideline imprisonment range of 84 to 105 months.  (PSR at 26.)  Hill's criminal-history calculation reflected his three prior drug felony convictions. (PSR ¶¶ 53–55.)

Both the government and the defense filed sentencing memorandums on January 25, 2013.  (Docs. 160, 162.)  The government argued for a prison term within the guidelines range of 84 to 105 months.  (Doc. 160 at 1.)  Hill's ten-page sentencing memorandum requested a non-guideline sentence or a downward departure, with an adjusted offense level of 21 and a downward departure to 19, for a non-guideline sentence of 60 months.  (Doc. 162 at 10.)  The memorandum recounted Hill's longstanding substance abuse difficulties, his service in the United States Army, and a criminal history driven by substance abuse.  The memorandum also described Hill's ability and willingness to work, and discussed his redeeming qualities.  Describing Hill as a "small fish" in the conspiracy (*id.* at 7), the defense urged a minor role adjustment and a downward departure.

The Court held a sentencing hearing on February 4, 2013.  (Docs. 165, 202.)  After hearing presentations from the parties, the Court declined to apply a minor role adjustment.  The Court also found that there were both aggravating and mitigating circumstances in the case, concluding that Hill was a "street-level dealer" and that a modest reduction was appropriate.  (Doc. 202 at 23.)  The Court adjusted Hill's offense level to 21, and with his criminal history category of V, concluded that the sentencing range was 70 to 87 months.  As noted above, the Court sentenced Hill to a 70-month term of imprisonment, to be followed by a four-year term of supervised release.  (Doc. 166.)

## III.   Direct Appeal

Hill pursued a direct appeal of his sentence.  His claims on appeal were that: (1) his guilty plea was not knowingly, voluntary, and intelligently made because Judge

Sessions asked compound questions during the plea hearing, and (2) his sentence was unreasonable because Judge Sessions applied a crack-to-powder cocaine ratio greater than 1:1.  (Doc. 264-2 at i–ii.)  On March 6, 2014, after Hill had filed his § 2255 Motion, the Second Circuit granted Hill's motion to withdraw his appeal.  (Doc. 254.)

## Discussion

### I.   Section 2255 Motion

As noted above, Hill raises four claims in his § 2255 Motion.  He claims that the grand jury indicted him based on perjured testimony.  He also claims prosecutorial misconduct, arguing that his arrest and prosecution were the result of vindictiveness and racial profiling.  Hill's third claim is that his Fourth and Fifth Amendment rights were violated.  Specifically, he argues that his arrest at the Anchorage Inn was unlawful, and that he was questioned in violation of his Fifth Amendment rights.

Finally, Hill claims that he received ineffective assistance of counsel.  He alleges that Attorney Glennon failed to raise the alleged grand jury perjury, prosecutorial misconduct, and Fourth and Fifth Amendment issues.  (Doc. 250 at 7–8; Doc. 251 at 3–4.)  Hill also alleges that Attorney Glennon was ineffective because, according to Hill, Glennon: (1) misled him concerning the definition of a federal drug conspiracy (Doc. 251 at 2); (2) made statements suggesting that Hill would not receive a fair trial, thereby inducing him to plead guilty (*id.*); (3) withheld exculpatory *Brady* information (Doc. 250 at 7); and (4) proceeded to sentencing without presenting the results of a psychological examination (Doc. 251 at 3–4).

The government argues that, except for the ineffective-assistance-of-counsel claim, all of Hill's § 2255 claims are procedurally barred because he failed to advance them on appeal.  (Doc. 264 at 6.)  Regarding the ineffective-assistance claim, the government argues that Attorney Glennon's performance was at or above an objective standard of reasonableness, and that even if counsel's performance was deficient, Hill cannot show prejudice.  (*Id.* at 10–19.)

Collateral review is not available for claims a petitioner failed to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).  Hill has not demonstrated actual innocence or cause and prejudice for his failure to raise his grand-jury-perjury, prosecutorial-misconduct, or Fourth and Fifth Amendment claims.  Those claims are therefore waived.

However, those three claims are part of Hill's ineffective-assistance-of-counsel claim, and are accordingly analyzed below.  *See Peart v. United States*, No. 97-CV-817, 1998 WL 5393, at *4 (N.D.N.Y. Jan. 5, 1998) (argument not raised on appeal *and* not part of ineffective-assistance claim could be procedurally barred).  Unlike other claims, ineffective-assistance claims may be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal."  *Massaro v. United States*, 538 U.S. 500, 504, 509 (2003); *accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).

## II.     Standards Governing Ineffective-Assistance-of-Counsel Claims

The defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, including entry of a guilty plea, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  The attorney has an "overarching duty to advocate the defendant's cause."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  In order to succeed on an ineffective-assistance claim, the defendant must meet the two-pronged test established in *Strickland*:

> (1) he "must show that counsel's performance was deficient," so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance"; and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (citations omitted) (quoting *Strickland*, 466 U.S. at 687, 690, 694).  "The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong."  *Id.* at 85 (citing *Strickland*, 466 U.S. at 687, 697).

The defendant's burden is heavy because, at the first step of the *Strickland* analysis, the performance prong, courts "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689), viewing the circumstances counsel faced "at the time of the relevant conduct"

and evaluating that conduct "from counsel's point of view," *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks omitted).  The determinative question is not whether counsel "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under prevailing professional norms." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal quotation marks omitted).  As the Supreme Court stated in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

At the second step of the *Strickland* analysis, the prejudice prong, the defendant must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Surmounting this "high bar" is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  To satisfy the prejudice prong in challenges to guilty pleas based on ineffective assistance of counsel, as Hill claims here, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Moreover, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence.  *See generally Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203.

## III.   Hill's Ineffective-Assistance-of-Counsel Claims

As described above, Hill's ineffective-assistance claim involves several components, each alleging some failure on the part of Attorney Glennon.  I apply the

*Strickland* standard to each component in turn.  Additional factual background is presented where necessary.

### A.    Failure to Raise Alleged Grand Jury Perjury Issue

It is undisputed that Cynthia Charbonneau gave an initial recorded interview to Det. Merchand on January 19, 2012.  According to Hill, Charbonneau's statements in that interview supported his innocence.  (Doc. 250 at 5; Doc. 251 at 3.)  According to the government, Charbonneau was asked to identify members of William Parker's drug trafficking organization, and she named Hill, but she also said that Hill had gone back to Georgia and did not want to be a part of Parker's group.  (Doc. 264 at 17.)  The government states that Det. Merchand did not ask follow-up questions on that topic, and did not focus his questioning on Hill during the interview.  (*Id.*)

In her grand jury testimony on March 29, 2012, Charbonneau was asked more detailed questions about Hill's involvement in the conspiracy, and she gave several answers that incriminated him.  (*Id.*)  According to the government:

> Among other things, she described her knowledge of Hill's involvement in trafficking drugs in Vermont toward the end of the charged conspiracy period—January and February 2012—including in the days before Det. Merchand arrested Hill on February 13, 2012.  In particular, she testified that, the day before Det. Merchand arrested Hill, he was staying at a local hotel, told her he needed to replenish his drug supply, and had her rent him a car so he could travel to New York City to obtain more drugs.

(*Id.*)  Charbonneau's grand jury testimony is also recounted in the PSR at ¶¶ 35–36.

Attorney Glennon has furnished an affidavit in response to Hill's claims in which he states that he "never discussed an allegation of grand jury perjury by Cynthia Charbonneau with Mr. Hill, and I saw no viable claim of grand jury perjury."  (Doc. 264-

3, Glennon Aff. ¶ 10.)  According to Attorney Glennon, "[w]e did discuss [Hill's] general disbelief that a cooperating informant/drug addict could be a credible trial witness."  (*Id.*)

I conclude that on this issue there is no evidence that Attorney Glennon's performance was deficient.  Charbonneau's statement on January 19, 2012 that Hill had gone back to Georgia and did not want to be a part of Parker's group turned out to be incorrect (and inconsistent with her grand jury testimony): Hill apparently did not return to Georgia after his arrival in Vermont.  But discrepancies in evidence do not by themselves establish that the government offered perjured testimony.  *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000).  As the Supreme Court has explained, "[a] witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1)).  Here, there is no evidence that Charbonneau's January 19 statement was made with intent to provide false testimony as opposed to being merely mistaken.  Attorney Glennon's conclusion that there was no viable claim of grand jury perjury was well within the range of professional competence.

In addition, Hill fails *Strickland*'s prejudice prong.  The PSR recounts substantial evidence of Hill's participation in the charged conspiracy, including the seizure of currency, scales, cocaine base, and powder cocaine from Hill's hotel room on two separate occasions.  (PSR ¶¶ 25, 31.)  As noted here, Hill also confessed to his participation in the conspiracy.  In light of this overwhelming evidence of guilt, Hill cannot establish that he sustained any prejudice as a consequence of the decision to not

challenge Charbonneau's veracity.  *Cf. Bank of Nova Scotia v. United States*, 487 U.S.
250, 254 (1988) ("[A] district court may not dismiss an indictment for errors in grand
jury proceedings unless such errors prejudiced the defendants.").

### B.      Failure to Raise Alleged Prosecutorial-Misconduct Issue

Hill claims that "selective prosecution" occurred in this case because "individuals
of Caucasian descent were involved for long durations in the conspiracy, yet were not
arrested and prosecuted."  (Doc. 250 at 8.)  He also claims that his prosecution was
vindictive because of his "refusal to cooperate against his alleged co[]defendants."  (Doc.
251 at 7.)  According to Hill, during the conspiracy, his brother William Parker lived
together with Parker's girlfriend Casey Sweeney and Casey Sweeney's mother, Julie
Sweeney, both of whom are white.  (*Id.* at 6–7.)  Apparently Hill believes that living
arrangement is evidence that the Sweeneys were guilty of conspiracy to distribute cocaine
base.  In support of that belief, Hill asserts that Casey Sweeney was arrested for
possession of cocaine base with intent to distribute, and that William Parker and Casey
Sweeney used Julie Sweeney's car in pursuit of the conspiracy.  (*Id.* at 7.)  Hill maintains
that "due to racial profiling and discrimination[,] Casey Sweeney and Julie Sweeney were
not prosecuted."  (*Id.*)

According to Attorney Glennon, he "never discussed an allegation of vindictive or
selecti[ve] prosecution with Mr. Hill.  There was no basis in law or fact for such a claim."
(Doc. 264-3, Glennon Aff. ¶ 11.)  The government asserts that its investigation "did not
turn up evidence to prosecute the Sweeneys—no confessions, no drug and cash seizures
from them, no recorded phone calls involving them, no significant witness statements

implicating them in drug trafficking activity." (Doc. 264 at 15–16.)[3]  The government

also notes that Patrick Lepore, a white male who was indicted with Hill, pleaded guilty to

the same charge that Hill did.  (*Id.* at 15 n.8.)

Attorney Glennon's conclusion that there was no basis for a vindictive- or

selective-prosecution claim is not evidence of deficient representation.  To establish a

selective-prosecution claim, Hill would have to show that he was "treated differently than

other similarly situated individuals and that such differential treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious or bad faith intent to injure."  *United States*

*v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009) (internal quotation marks omitted).

Vindictive prosecution—i.e., penalizing someone for exercising his constitutional

rights—can be grounds for dismissing an indictment.  *Id.* at 122.

Here, Hill's representations are insufficient to prove that the Sweeneys were guilty

of conspiracy but passed over for prosecution because of their race.  Attorney Glennon

could reasonably conclude that the Sweeneys were treated differently because their

situations were different, not because they are white.  The fact that Lepore was

prosecuted further undermines the suggestion that the government's prosecution decision

was based on race.  Hill's assertion that he was vindictively prosecuted because he

refused to cooperate against his codefendants is likewise an insufficient basis for finding

Attorney Glennon's performance deficient.  Hill offers no evidence for that assertion, and

---

[3]  The government states that it had some evidence that Julie Sweeney was a customer of the
conspiracy, but that there was no evidence to implicate the Sweeneys in supplying crack to Vermont from
out of state.  (*Id.* at 16 n.9.)

his own speculation is not enough. *See United States v. Kelley*, 152 F.3d 881, 885–86 (8th Cir. 1998) (defendant's assertion that his prosecution was vindictive because he refused to cooperate with investigation was insufficient; there were no "specific facts sufficient to raise a significant doubt that the government's decision to prosecute was vindictive or retaliatory").

Finally, Glennon's strategic decisions cannot be viewed in isolation. As explained below, Glennon was able to negotiate a favorable plea agreement for Hill, one that avoided a possible ten year mandatory minimum sentence. For these reasons, Hill's claim fails.

### C.    Failure to Raise Alleged Fourth or Fifth Amendment Issues

Hill asserts that his Fourth and Fifth Amendment rights were violated at the time of his arrest at the Anchorage Inn, and that Attorney Glennon was ineffective for failing to raise those issues. (Doc. 250 at 7.) As noted above, Hill asserts that he was unlawfully detained and questioned at that time. (*Id.*) According to Hill, law enforcement found no illegal items described by the warrant on his person or in his room. (*Id.* at 5.) This assertion is not borne out by the PSR. (PSR ¶ 25.) Also according to Hill, he made incriminating statements, but those statements were untrue because he was under the influence of drugs and alcohol and "felt at that time that I might receive physical harm if I did not compromise." (*Id.* at 6.) Specifically, Hill asserts that he was "surrounded by a number of Federal Agents"; that he was "half naked cuffed to a chair"; and that he feared for his life. (*Id.*)

Attorney Glennon has offered the following testimony regarding the defense response to the law-enforcement conduct at the Anchorage Inn:

> Mr. Hill was advised that he may have had a palatable motion to suppress statements regarding Det. Daniel Merchand's questioning of him on or about February 13, 2012 at the Anchorage Inn.  However, Mr. Hill was also advised that any suppression of statements may not result in exclusion of the physical evidence recovered from him under *U.S. v. Patane* [542 U.S. 630 (2004)].   Moreover, notwithstanding whether the exclusionary rule would have applied to the physical evidence, the discovery showed there was other independent evidence the government could have relied upon at trial, which Mr. Hill and the undersigned discussed, as we reviewed the discovery in the case together, in painstaking detail (i.e. the other drug seizure, recorded call with co[]defendant Daggs, and the representation of the government of additional grand jury witness testimony by other witnesses not yet disclosed at time of change of plea).

(Doc. 264-3, Glennon Aff. ¶ 4.)  Attorney Glennon goes on to state that "Mr. Hill ultimately decided to change his plea because he did not want to move for suppression of statements and physical evidence at the risk of the government filing an information under 21 USC § 851 to seek a 10-year mandatory minimum sentence in his case."  (*Id.* ¶ 6.)  According to Attorney Glennon, the government had conveyed to him that possible course of action, and "Mr. Hill weighed the pros and cons and decided it was not worth the risk to file motions, and possibly go to trial, knowing that his potential sentence could be significantly enhanced."  (*Id.*)

Indeed the PSR reveals that Hill has three prior felony drug convictions.  (PSR ¶¶ 53–55.)  By accepting the government's plea offer, Hill avoided the 10-year mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B) which would have been triggered upon the filing of an information by the United States Attorney pursuant to

21 U.S.C. § 851. Attorney Glennon thus successfully negotiated a plea agreement that avoided a 10-year mandatory minimum sentence.

I begin by noting that defense counsel "is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion." *United States v. Aulet*, 618 F.2d 182, 187–88 (2d Cir. 1980) (quoting *LiPuma v. Comm'r, Dep't of Corr.*, 560 F.2d 84, 93 (2d Cir. 1977)). Critically for present purposes, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Here, as in *Gibbons*, Hill "has not shown that his counsel's decisions were anything other than strategic." *Id.* To the contrary, Attorney Glennon's decision was consistent with Hill's wishes after thorough discussion, and was quintessentially strategic. Foregoing a motion based on the alleged Fourth and Fifth Amendment violations made strategic sense both because it avoided the possibility of a far more severe sentence, and because even if the motion had been filed, it would not have deflected the government's other evidence against Hill.

D.      **Alleged Misleading Statements Regarding Definition of Conspiracy**

Hill maintains that Attorney Glennon "lied and/or misled me as to the meaning of conspiracy as defined by federal law." (Doc. 250 at 4.) More specifically, Hill states as follows:

> At the defendant's initial meeting with Mr. Greg[]ory Glennon upon
> discussing the alleged charges against Mr. Hill, Mr. Glennon displayed
> incompetence in knowledge of the charge against the defendant.   Mr.
> Greg[]ory Glennon stated in summary of the charge of conspiracy to
> distribute cocaine base of 28 grams or more, "conspiracy is a broad issue."
> I later became aware after conviction that conspiracy as defined by Federal
> law must consist of two elements: 1st [there] must be an agreement and 2nd
> [there] must be a stake or benefit in the ultimate goal of the conspiracy.
> Neither of these elements existed in the case against the defendant and if
> advised of this knowledge by my attorney at that time Greg[]ory Glennon it
> would have le[]d to the defendant not entering a plea of guilty.

(Doc. 251 at 2.)  For his part, Attorney Glennon states that: "Prior to his decision to plead

guilty, I reviewed the definition and elements of federal drug conspiracy law with Mr.

Hill in exhaustive detail.  This review included showing him pattern jury instructions and

explaining those instructions to him."  (Doc. 264-3, Glennon Aff. ¶ 9.)  The government

points out that Hill's claim on this issue is contrary to his sworn statement at the change-

of-plea hearing that Attorney Glennon had explained the nature and elements of the

charge.  (*See* Doc. 203 at 12:7–10 ("THE COURT: Has [Attorney Glennon] explained to

you the nature and the elements of the charges here together with any defenses that you

may have?"  THE DEFENDANT: Yes, [Y]our Honor.").)

I begin by noting that, "[t]o sustain a conspiracy conviction, the government must

present some evidence from which it can reasonably be inferred that the person charged

with conspiracy knew of the existence of the scheme alleged in the indictment and

knowingly joined and participated in it."  *United States v. Anderson*, 747 F.3d 51, 60 (2d

Cir. 2014) (internal quotation marks omitted).  "It is not necessary to prove that the

defendant expressly agreed with other conspirators on a course of action; it is enough,

rather, to show that the parties had a tacit understanding to carry out the prohibited

conduct." *Id.* at 61 (internal quotation marks and alteration omitted).  Judge Sessions

explained the essential elements of a § 846 conspiracy to Hill at the change-of-plea

hearing.  (Doc. 203 at 12.)

Here, Hill's assertion that Attorney Glennon misled him or lied about the

definition of conspiracy is the sort of "vague, conclusory, or palpably incredible"

allegation that is insufficient to even warrant a hearing.  *Gonzalez v. United States*, 722

F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495

(1962)).  Hill's assertion also fails to rebut the presumption of verity that attaches to his

sworn statement in court, (Doc. 203 at 12), that Attorney Glennon had explained the

nature and elements of the charge.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

("Solemn declarations in open court carry a strong presumption of verity.  The

subsequent presentation of conclusory allegations unsupported by specifics is subject to

summary dismissal, as are contentions that in the face of the record are wholly

incredible." (citing *Machibroda*, 368 U.S. at 495–96)).

### E.    Alleged Statements to Induce a Guilty Plea

According to Hill, Attorney Glennon told him that he would not get a fair trial in

Burlington, Vermont.  (Doc. 250 at 4.)  Specifically, Hill asserts that Attorney Glennon

stated: "In the United States District for the District of Vermont the Defendant would not

receive a fair trial and that a jury consisting of a majority to all White/European de[s]cent

would find the defendant guilty regardless to facts, circumstances, and legal instructions

to carry out justice."  (Doc. 251 at 2.)  Hill also says that Attorney Glennon told him that

he had worked as a district attorney in Boston, and that if Hill had been in Boston or New

York he would not have been charged with conspiracy.  (*Id.* at 3.)  Hill maintains that

Attorney Glennon's statements led him to believe that he would not receive a fair trial,

and that he felt that his only avenue was to plead guilty.  (*See id.*)

According to Attorney Glennon, he never told Hill that he would not receive a fair

trial.  (Doc. 264-3, Glennon Aff. ¶ 3.)  He states that he did share with Hill that he was

once a prosecutor in Boston, but asserts that "the context of that discussion was related to

Mr. Hill having a difficult time understanding why he was being prosecuted in federal

court, since he had never been prosecuted in federal court for prior similar activities."

(*Id.* ¶ 2.)  Attorney Glennon further states:

> I told Mr. Hill it is possible that he would have been prosecuted in state
> court in New York if he had been apprehended there with the same drug
> quantity when he was there for his supply pick up.  However, I explained to
> him that there is jurisdiction in federal court for prosecuting drug cases.

(*Id.*)

The government maintains that Hill's contentions as to Attorney Glennon's

alleged statements are "simply untrue" and that Hill's frustration about being charged in

federal court "apparently caused him either to misconstrue or purposefully

mischaracterize Attorney Glennon's statements in this post-conviction filing."  (Doc. 264

at 12.)  I conclude that Hill's assertions are wholly incredible and inconsistent with his

prior statements under oath.  At his change-of-plea hearing, Hill stated under oath in open

court that no one had threatened him or forced him in any way to plead guilty, and that no

one had made any representations to him that induced him to plead guilty.  (Doc. 203 at

15:6–9; 17:11–14.)  Hill's conclusory and self-serving declarations to the contrary are insufficient to rebut the presumption that his statements in open court were true.

###   F.   Alleged Withholding of *Brady* Information

Hill additionally claims that "[i]nformation proving prosecut[ori]al misconduct was withheld from *Brady* materials and/or concealed from me by my attorney."  (Doc. 250 at 7.)  The government maintains that it timely produced all discovery to Hill.  (Doc. 264 at 13 n.6.)  Attorney Glennon states that "[a]t no time at any stage of the proceedings did I withhold or conceal exculpatory information from Mr. Hill."  (Doc. 264-3, Glennon Aff. ¶ 5.)

Hill's claims regarding prosecutorial misconduct are discussed above.  It is unclear what information Hill believes might have been withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), either by the prosecution or Attorney Glennon.  I conclude that Hill's allegation of withheld exculpatory information is vague, conclusory, and insufficient to defeat the government's opposition to his § 2255 Motion.

###   G.   Psychological Examination Results

Finally, Hill claims that Attorney Glennon was ineffective because, despite having "complete knowledge that my psychological evaluation wasn't complete before sentencing, [he] made no objections or request to postpone my sentencing date."  (Doc. 250 at 4; *see also* Doc. 251 at 3–4.)  The government maintains that Attorney Glennon's decision not to request to postpone sentencing was neither deficient nor prejudicial, since the psychologist was able to reach conclusions based on the information she obtained,

and because those conclusions would have been detrimental to Hill at sentencing.  (*See* Doc. 264 at 14–15.)

The following additional facts are relevant to Hill's claim on this point.  Attorney Glennon engaged Claire Gilligan, Psy.D., to perform a psychological evaluation of Hill. According to Attorney Glennon, Hill never completed and returned questionnaires to Dr. Gilligan that she needed to complete her evaluation.  (Doc. 264-3, Glennon Aff. ¶ 7.) Attorney Glennon states that he wrote and called his client multiple times to address that issue, but without success.  (*Id.*)  Ultimately, Dr. Gilligan informed Attorney Glennon that even if Hill had completed the forms, it would not alter her preliminary assessment based on her interview with Hill and other information that she gathered.  (*Id.*)  Her assessment was that there were no indications of a major mental illness or an affective disorder that might be relevant to the disposition of the case; that Hill had characteristics associated with psychopathic individuals; and that he met diagnostic criteria for Antisocial Personality Disorder and Polysubstance Dependence.  (*Id.*)

Based on that evidence, I conclude that Attorney Glennon's decision to proceed to sentencing without a complete evaluation from Dr. Gilligan was neither deficient nor prejudicial.  Dr. Gilligan had informed Attorney Glennon that even if Hill had completed the questionnaires, her preliminary assessment would remain unchanged.  If the assessment had been presented at sentencing, it would not have aided Hill's cause.  In light of this, and Hill's refusal to fully participate in the evaluation, Attorney Glennon's decision to proceed without presenting Dr. Gilligan's evaluation was competent representation under prevailing professional norms.

## IV.    No Hearing is Required

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of motions that present facially valid claims).  However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda*, 368 U.S. at 495; *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  *See Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).  Hill has failed to show specific facts that if proved at a hearing would warrant the granting of his Motion.  Accordingly, no hearing is required.

## <u>Conclusion</u>

For the reasons set forth above, I recommend that Hill's § 2255 Motions to vacate, set aside, or correct his sentence (Docs. 250, 251) be DENIED.

Dated at Burlington, in the District of Vermont, this 21st day of August, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).