UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No.. 2:12-cr-12-04 |
| | ) | |
| MELVIN K. HILL | ) | |

## OPINION AND ORDER
(Docs. 249, 253, 255)

Defendant Melvin K. Hill, representing himself, moves under 18 U.S.C. § 983(e) to set aside a declaration of forfeiture regarding currency seized in February 2012. (Docs. 249, 253.) Hill also moves under Federal Rule of Criminal Procedure 41(g) for the return of property, including currency, seized in May 2012. (Doc. 255.)[1] For the reasons set forth below, Hill's motion to set aside a declaration of forfeiture is GRANTED and the motion for the return of seized property is GRANTED in part and DENIED in part.

### Factual Background and Procedural History

On February 13, 2012, Detective Daniel Merchand, then of the Burlington Police Department, executed a search warrant of Room 229 at the Anchorage Inn in Burlington, Vermont, with the assistance of federal law enforcement officers. *United States v. Hill*, No. 2:12-CR-12-04, 2014 WL 971748, at *1 (Mar. 12, 2014). Hill alleges that law enforcement found him inside, searched his person, and illegally seized approximately $2,200. *Id.* Law enforcement expressed their interest in engaging Hill as a confidential informant, returned $200 of the seized currency to him to allow payment for the hotel room, and released him without immediately filing charges. *Id.*; *see also* Doc. 249 at 1.

---

[1] Because Hill's criminal case has resolved to judgment, the Court construes Hill's motions as civil actions in equity. *See Diaz v. United States*, 517 F.3d 608, 610 (2d Cir. 2008) ("A rule 41(g) motion that is brought after the criminal proceeding is over is treated as a civil equitable action").

1

On March 12, 2012, the Drug Enforcement Agency (DEA) sent written notice of the February 2012 seizure by certified mail, return receipt requested, to each of three separate addresses: (1) Room 229 of the Anchorage Inn in South Burlington; (2) an address in Tignall Georgia; and (3) an address in Newport News, Virginia. *Hill*, 2014 WL 971748, at *1. The notices sent to the Anchorage Inn and Virginia were returned to the DEA undelivered. On March 14, 2012, the DEA received a return receipt indicating an individual signed to accept delivery of the notice sent to Georgia. The DEA then published notice of the seizure in the *Wall Street Journal* one day per week for three successive weeks in late March and early April. *Id.* The mailed notices stated the deadline to file a claim was April 16, 2012, or if the mailed notice was not received, the published notice stated that the deadline to file a claim was May 10, 2012. (Doc. 247-1 at 4, 7, 9, 11, 13.)

Hill alleges he did not receive any written notice of the seizure, and that his father, Melvin Hill, Sr., was the individual who signed for the notice sent to the Georgia address. *Id.*; *see also* Doc. 249 at 2. In April 2012, a confidential informant advised law enforcement that Hill was still distributing narcotics in Burlington and was staying at the Ho Hum Motel. (PSR at 10.) On April 19, 2012, the grand jury returned an indictment charging Hill with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) and this Court issued an arrest warrant for Hill. (Docs. 14, 19.) On May 7, 2012, Detective Merchand arrested Hill at the Quality Inn in South Burlington, Vermont and seized approximately $1,100.[2] *Hill*, 2014 WL 971748, at *1; *see also* Doc. 225 at 1; Doc. 259 at 2. Hill was detained pending trial. (Doc. 46.)

On May 29, 2012, having received no claims for the currency, the DEA issued a Declaration of Forfeiture. (Doc. 247-1 at 16.) On October 2, 2012, Hill pleaded guilty to one

---

[2] There is a discrepancy regarding the exact amount of money seized from Hill on this date discussed more fully below. *See Hill*, 2014 WL 971748, at *5 n.6, Doc. 259 at 2.

count of conspiracy to distribute cocaine base. *See* Doc. 103; Dkt. Entry No. 116. On February 4, 2013, he was sentenced to 70 months in prison. (Doc. 166.)

With regard to the February 2012 seizure, on August 6, 2013, representing himself, Hill moved under Rule 41(g) for the return of the currency seized during February 2012. (Doc. 222.) He asserted the currency was illegally seized, and he did not receive notice of the seizure with sufficient time to challenge forfeiture. *Id.* at 2. Hill requested the return of $2,200, plus interest, and demanded a total sum of $2,400. *Id.* at 5. Hill concedes that law enforcement returned $200. (Doc. 249.) On January 21, 2014, Hill moved to set aside the civil forfeiture of the property seized in February 2012 under 18 U.S.C. § 983(e), asserting the government failed to take reasonable steps to provide him notice and that he did not receive notice. (Docs. 249, 253[3].) The government argues the DEA properly effected an administrative forfeiture of the seized currency in accordance with 18 U.S.C. § 983 and 19 U.S.C. § 1607, and Hill's claim was barred by the doctrine of sovereign immunity. (Doc. 247 at 3-5.)

With regard to the May 2012 seizure, on September 12, 2013, again representing himself, Hill moved under Rule 41(g) for the return of the currency seized on May 7, 2012, plus interest. (Doc. 225.) The government did not oppose the motion. (Docs. 230, 247 at 2.) The government's response, however, suggested that law enforcement seized $1,572, not $1,100, during the May 7, 2012 arrest. *See* Doc. 247 at 2.

On March 12, 2014, this Court issued an Opinion and Order denying Hill's motions under Rule 41(g) for return of the $2200 seized in February (Docs. 222, 233), granting in part and denying in part the motion under Rule 41(g) for return of the $1,100 seized in May (Doc.

---

[3] On March 4, 2014, Hill filed a second motion to set aside forfeiture under § 983(e) regarding the February 2012 seizure (Doc. 253) that appears to be a complete copy of the initial motion (Doc. 249) with one minor handwritten change. The Court construes these two motions as one and the same.

3

225), and declining to rule on the motion to set aside the declaration of forfeiture with regard to the February seizure (Doc. 249). *Hill*, 2014 WL 971748. The Court held the Rule 41(g) motions regarding the February seizure were barred by sovereign immunity, *id.* at *3, and, because the government did not oppose the motion, granted Hill's Rule 41(g) motion for return of the currency seized in May[4] but denied his request for prejudgment interest because sovereign immunity precluded the award. *Id.* at *5.

With regard to the motion to set aside the civil forfeiture of currency seized in February, this Court held the Government's sovereign immunity defense did not apply to Hill's § 983(e) motion challenging notice. *Id.* at *4. Because 18 U.S.C. § 983(e) provides "the *exclusive* remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute," 18 U.S.C. § 983(e)(5) (emphasis added), it is an express waiver of sovereign immunity for purposes of notice-based challenges to executed forfeitures. *Hill*, 2014 WL 971748, at *4 (citations omitted). Section 983(e) allows a court to grant a motion to set aside a declaration of forfeiture if the government knew of the moving party's interest and failed to take reasonable steps to provide notice and the party did not know of the seizure to file a timely claim. 18 U.S.C. § 983(e)(1)(A)-(B). This Court found it:

> lack[ed] the information necessary to evaluate whether the Government failed to take reasonable steps to provide Hill with notice of the seizure. The Court cannot discern . . . how the three addresses the DEA used were selected or whether the Government might have used a different address. Therefore, the Court will hold the matter open. The parties shall submit supplemental briefing, with accompanying affidavits, on the issue of whether the Government took reasonable steps to provide Hill with notice of the seizure and whether the notices sent by DEA were reasonably calculated under all the circumstances to apprise Hill of the seizure.
> With respect to the Government's argument that Hill should have known of the seizure and cannot satisfy § 983(e)(1)(B), the Court credits Hill's argument that he could not have known whether Burlington Police Department or the

---

[4] The Opinion noted that "[r]egardless of the amount, Hill is entitled to all currency seized on May 7, 2012." *Hill*, 2014 WL 971748, at *5 n.6.

4

> federal government ultimately took possession of the currency. . . . [T]he currency was seized by DEA Special Agents and Detectives from the Burlington Police Department. Although Hill knew the currency was seized, the issue is whether he knew or should have known of the seizure for purposes of filing a timely claim. Without knowing which law enforcement agency ultimately took possession, Hill could not have known where to file. Therefore, Hill's claim satisfies the second element of § 983(e).

*Hill*, 2014 WL 971748, at *5 (internal quotation marks and citations omitted).

Also on March 12, 2014, Hill filed a second motion under Rule 41(g) to return property seized on May 7, 2012. (Doc. 255.[5]) Hill seeks the return of an "estimated $500" belonging to him but allegedly improperly returned to another individual who was also present at the time of the arrest, personal property including "clothes, jewelry, playstation 3, and games" worth $750, and 6% interest on the total amount of cash seized in May 2012. *Id.* at 2-3. Hill concedes the Government had returned $1,022. *Id.* at 1.

On March 28, 2014, the Government opposed the motion arguing Hill's claim to the additional money seized is barred by sovereign immunity because the money has been returned to the other individual and is no longer in the Government's possession. The Government represented that $1,100 had been returned to Hill but also stated that "law enforcement may still be in possession of about $500 cash seized from Hill in May 2012." (Doc. 259 at 2 & n.1.) With regard to the personal property and prejudgment interest, the Government argues Hill's claims are barred by the doctrine of sovereign immunity.[6] *Id.*

On April 15, 2014, in accordance with the Court's March 12 Order, the Government filed its supplemental brief together with an affidavit of DEA Special Agent Thomas L. Doud. (Docs. 262, 262-1.) On April 21, Hill filed a supplemental document including an affidavit and exhibits

---

[5] Hill signed the motion on March 3, 2014, prior to the March 12 Opinion and Order.
[6] The government represents law enforcement did not seize Hill's personal property during his May 2012 arrest and does not have the property described by Hill in its evidence vault. (Doc. 259 at 2.)

5

in further support of his § 983(e) motion. (Doc. 263.) On May 6, Hill filed a response to the Government's supplemental brief and affidavit. (Doc. 265.)

## Discussion

I.  **Law on Drug-Related Forfeitures**

The DEA can seize and forfeit any item of value furnished or intended to be furnished in exchange for a controlled substance, and all proceeds traceable to such an exchange. 21 U.S.C. § 881(a)(6), (b). The DEA may execute the forfeiture administratively if the value of the seized property is less than $500,000. 19 U.S.C. § 1607(a)(1), (4). In conducting an administrative proceeding, the DEA is required to (1) send a written "notice of seizure" to any party "who appears to have an interest" in the funds and (2) publish notices in a newspaper for "three successive weeks." *Id.* § 1607(a); *see* 18 U.S. C. § 983(a)(1)(A)(i).[7] If a party submits a timely claim for the funds, the administrative proceeding must be converted into a judicial proceeding. *See* 19 U.S.C. § 1608; 18 U.S.C. § 983(a)(3)(A). However, if no party submits a claim for the funds by the applicable deadline, *see* § 983(a)(2)(A), the DEA may conclude the administrative proceeding with a Declaration of Forfeiture which has the same force as a Final Decree and Order of Forfeiture issued in a judicial proceeding. 19 U.S.C. § 1609.

18 U.S.C. § 983 provides the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."[8] *Id.* § 983(e)(5); *see also United States v. Cobb*, 646 F. App'x 70, 72 (2d Cir. 2016) (stating the "general rule is that a federal court lacks

---

[7] The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") enacted 18 U.S.C. § 983. CAFRA applies to civil forfeiture proceedings commenced on or after August 23, 2000. *United States v. 557,933.89 More or Less, in United States Funds*, 287 F.3d 66, 76 n.5 (2d Cir. 2002).

[8] Section 983(e) constitutes an express waiver of sovereign immunity for purposes of notice-based challenges to executed forfeitures. *McKinney v. DEA*, 580 F. Supp. 2d 1, 3-4 (D.D.C. 2008) ("[O]nce an administrative declaration of forfeiture has been issued[,] . . . the United States has unequivocally expressed its consent to be sued only under 18 U.S.C. § 983(e)(1)."). Accordingly, any claim against the United States other than a claim under § 983(e) challenging notice is barred by sovereign immunity.

jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun") (internal quotation marks omitted). Section 983(e) explicitly permits the court to consider only the issue of adequate notice. 18 U.S.C. § 983(e)(1); *Cobb*, 646 F. App'x at 72 (noting federal courts retain jurisdiction to determine only "whether the agency followed the proper procedural safeguards when it declared claimant's property summarily forfeited") (internal quotation marks and alterations omitted).

> 18 U.S.C. § 983(e)(1) provides, in relevant part, that:
>
> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
> (A) The Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
> (B) The moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1)(A)-(B). If the moving party satisfies both elements, "the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party." *Id.* § 983(e)(2)(A). Section 983(e)(2) allows the federal government to begin a subsequent proceeding "[n]otwithstanding the expiration of any applicable statute of limitations." *Id.*

Due Process under the Constitution also requires that notice of forfeiture be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbury v. United States*, 534 U.S. 161, 170 (2002); *accord Alli-Balogun v. United States*, 281 F.3d 362, 369 (2d Cir. 2002).

7

**II.     Motion for Return of Seized Property under Rule 41(g): May 7, 2012 Arrest**

On March 12, 2014, Hill filed a second motion under Rule 41(g) seeking the return of an "estimated $500" belonging to him but allegedly improperly returned to another individual who was also present at the time of the arrest, personal property including "clothes, jewelry, playstation 3, and games" worth $750, and 6% interest on the total amount of cash seized on May 7, 2012. (Doc. 255 at 2-3; *see also* Doc. 225.) The parties agree the Government has returned an amount between $1,022 and $1,100. (Doc. 255 at 1; Doc. 259 at 2 n.1.)

The Government argues Hill's claim to the additional money seized is barred by sovereign immunity because the money has been returned to the other individual and is no longer in the Government's possession but also stated that "law enforcement may still be in possession of about $500 cash seized from Hill in May 2012." (Doc. 259 at 2.) While Hill's claim to any currency that is no longer in the Government's possession is barred by sovereign immunity, *see Diaz*, 517 F.3d at 612 ("if the property is no longer available, sovereign immunity bars the claimant from seeking compensation"), the Court has already ordered the Government to "make all reasonable efforts to effect the return of all currency seized from Hill's person incident to the May 7, 2012 arrest." *Hill*, 2014 WL 971748, at *5. On March 28, 2014, the Government subsequently represented: "When and if the [Government] is able to verify whether this money was taken from Hill, and the exact amount seized, the government will begin making arrangements to return the cash pursuant to law enforcement's protocols for release of evidence and this Court's March 12, 2014 Order." (Doc. 259 at 2 (citing *Hill*, 2014 WL 971748, at *5 n.6).) If it has not already, the Government is now further ordered to make good faith, reasonable efforts to effect the return of any additional currency seized from Hill incident to the

May 2012 arrest that remains in its possession. The Government shall then certify in writing to the Court and to Mr. Hill its efforts in this respect no later than [July 1, 2019].

With regard to personal property and prejudgment interest, the Government argues Hill's claims are barred by the doctrine of sovereign immunity. (Doc. 259 at 2.) In the March 12 Opinion and Order, this Court held "the Government's sovereign immunity bars the Court from awarding prejudgment interest." *Hill*, 2014 WL 971748, at *5. The Court adheres to that holding. The Court credits the Government's representation that it does not possess any personal property of Hill's and further holds Hill's claim to any personal property, or its value, is also barred by sovereign immunity. *See Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir. 2004) (noting when, "for whatever reason," the property sought is no longer physically available, the doctrine of sovereign immunity bars "actions for money damages relating to such property"). Accordingly, Hill's second motion under Rule 41(g) seeking the return seized property is GRANTED in part and DENIED in part.

III. **Motion to Set Aside Declaration of Civil Forfeiture Under 18 U.S.C. § 983(e)**

Hill's motion to set aside the DEA's Declaration of Forfeiture remains pending following the Court's March 12, 2014 Opinion and Order. Hill alleges that he did not receive notice of the February 2012 seizure and that the Government failed to take reasonable steps to provide him notice and, therefore, he is entitled to have the Declaration of Forfeiture set aside under 18 U.S.C. § 983(e). (Docs. 249 at 1, 253 at 1.)

The March 12 Opinion determined Hill has satisfied the second element of § 983(e). *Hill*, 2014 WL 971748, at *5 ("Without knowing which law enforcement agency ultimately took possession, Hill could not have known where to file. Therefore, Hill's claim satisfies the second element of § 983(e)."). The Court adheres to that holding. *See Mikhaylov v. United States*,

29 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (applying a "pro-plaintiff standard" requiring the moving party have knowledge of both the seizure and the identity of the forfeiting agency).

With regard to the first element of § 983(e), clearly the Government was aware of Hill's interest in the seized property; accordingly, the issue remaining for the Court to determine is whether the Government failed to take reasonable steps to provide Hill with notice of the seizure. The parties filed supplemental briefing and supporting affidavits (Docs. 262, 263, 265) "on the issue of whether the Government took reasonable steps to provide Hill with notice of the seizure and whether the notices sent by DEA were reasonably calculated under all the circumstances to apprise Hill of the seizure." *Hill*, 2014 WL 971748, at *5

As the Court has stated, where an agency "fails to take steps to locate [the movant] in order to effectuate delivery of the notice," or otherwise knows the movant's location, an undelivered notice does not satisfy the requirements of § 1607. *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1161 (2d Cir. 1994); *see also Taft v. United States*, 824 F. Supp. 455, 465 (D. Vt. 1993) ("it must be determined whether DEA knew or should have known" movant did not reside at the address used). The Government also may not be entitled to rest upon the publication of notice alone. *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) ("Notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable.").

The Government has submitted an affidavit of DEA Special Agent Doud, the Acting Resident Agent in Charge of the DEA Vermont Office, outlining the steps law enforcement and the DEA took to research Hill's address history in an effort to ensure he received notice of the forfeiture. Doud explained Detective Merchand—now of the DEA Vermont Drug Task Force but, at the time, of the Burlington Police Department—provided the DEA Burlington, Vermont

Office with Hill's only known physical address in Vermont—Anchorage Inn Room 229, 108 Dorset Street, South Burlington, Vermont—and the address from Hill's Georgia driver's license—6197 Elberton Road, Tignall, Georgia 30668-2003—that Detective Merchand viewed during the February 2012 seizure. (Doc. 262-1 (Doud Aff.) ¶ 4.A.) Though Detective Merchand sought to continue Hill's cooperation with his investigation, "[l]aw enforcement lost contact with Hill until his second arrest in May 2012." *Id.*

Doud further averred a "DEA records examiner/analyst then searched the Lexis Nexis, Accurint, and Cleary Thompson Reuters databases in an attempt to locate any other relevant addresses for Hill." *Id.*¶ 4.B. This search of "over 37 billion current public records" produced one more address—817 Eclipse Court #35, Newport News, Virginia. *Id.* The examiner also reviewed Hill's criminal history report which did not list any addresses. *Id.* Finally, Doud averred Hill signed a written receipt acknowledging the return of $200 in the early morning hours of February 14, 2012, on which his address was listed as "transient." *Id.* ¶ 6.[9]

Hill asserts his prior addresses were available to the Government through Georgia Parole and Probation and were confirmed in the Presentence Investigation Report (PSR) prepared in this criminal case in Vermont.[10] He argues it was not reasonable for the Government to believe he resided at the Anchorage Inn as it was a hotel and not reasonably considered to be a permanent address. Hill states the "Government could have utilized a simple phone call" to determine his address, and avers his residence was 6205 Elberton Road, Tignall Georgia, the home of his deceased grandparents, "an address easily attainable by the government." (Doc. 263 at 4-5.) He further notes the Government was aware of his "whereabouts and residence" once he was

---

[9] Doud states the receipt is attached to his affidavit, however, it was not filed with the Court. *See* Doc. 262-1 ¶ 6; Dkt. Entry No. 262.
[10] The January 3, 2013 PSR lists Hill's residence address as 6197 Elberton Road. (PSR at 2.)

11

arrested by Detective Merchand on May 7, 2012, which Hill points out was more than three weeks prior to the Declaration of Forfeiture. *Id.*

Hill cites *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1161 (2d Cir. 1994), for the proposition that "where the mailed notice of forfeiture is returned undelivered, the intended recipient is known by the notifying agency to be in Government custody, and the agency fails to take steps to locate him in order to effectuate delivery of the notice, . . . such notice does not satisfy the requirements of the statute." (Doc. 263-1.) He further points to *United States v. Sykes*, No. 05-cr-6057, 2008 WL 3049975 (W.D.N.Y. July 31, 2005), as an example of a case where after mailed notices were returned to the DEA unclaimed and the movant was later in custody, the DEA also sent written notice to him in prison. (Doc. 263-2 at 1.) He also submits his certificate of release or discharge from active duty showing his separation date as May 4, 1998. (Doc. 263-2 at 2.) The certificate lists both his home of record at time of entry and his mailing address after separation as 6197 Elberton Road. *Id.* The certificate is signed "Melvin K. Hill." *Id.*

The Court acknowledges Hill's argument that a hotel was not likely to be a permanent address. SA Doud's affidavit does not explain why the Newport News, Virginia address was determined to be relevant. The use of the address on Hill's driver's license, however, was reasonable. Hill does not explain what phone call the Government could have made to "easily attain" his address. The signature on the return receipt received by the DEA shows "Melvin Hill" and includes a check in the box that it was signed by the addressee. *See* Doc. 247-1 at 10.

Notwithstanding the signature by a "Melvin Hill" on the notice sent to Hill's former residence in Georgia, the Court determines the Government's notice was not reasonably calculated to apprise Hill of the pendency of the action. The Supreme Court has stated that

"when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Here, law enforcement was aware Hill was transient and in the Burlington area in April 2012, a warrant was issued in Vermont for his arrest in April 2012, and he was actually arrested by the same law enforcement officer, Detective Merchand, in Burlington, Vermont on May 7, 2012, three days prior to the expiration of the time for filing a claim and over three weeks prior to the issuance of the Declaration of Forfeiture. In these circumstances, the Government did not satisfy the requirements of the statute, construed in accordance with the requirements of the Constitution.

While this case is distinguishable from the *Torres* and *Sykes* cases because one of the mailed notices appeared to be delivered to the movant, it is similar in that Hill was also held in federal custody prior to the Declaration of Forfeiture. The court finds it significant that Hill was arrested by the same law enforcement officer who had seized the money to be forfeited. In the *Sykes* case, the DEA also sent written notice of the seizure to Mr. Sykes in the federal detention center where he was being held. *Sykes*, 2008 WL 3049975, at *2. Here, the Government took no such step even though Hill had informed them he was "transient," and they had been informed he was in Burlington. Accordingly, it was not reasonable for the Government to assume Hill had received the notice sent to Georgia.

The Court finds the DEA, through local law enforcement, should have known Hill did not reside at the Georgia address used. *See Taft*, 824 F. Supp. at 465 ("it must be determined whether DEA knew or should have known" movant did not reside at the address used). Once the Government was aware of Hill's actual location because he was in the Government's custody prior to expiration of the time to file a claim, additional written notice to Hill was required to

13

meet the requirements of the Due Process Clause of the Constitution. *See Dusenbury*, 534 U.S. at 170 (holding the Constitution requires that notice of forfeiture be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action); s*ee also Mullane*, 339 U.S. at 314 (same). Under the circumstances of this particular case, the Government's notice was not reasonably calculated to apprise Hill of the administrative forfeiture proceedings against the property seized from him.

Therefore, Hill's motion to set aside the May 29, 2012 Declaration of Forfeiture (Docs. 249, 253) is GRANTED without prejudice. 18 U.S.C. § 983(e)(2)(A) (a court setting aside a declaration of forfeiture must do so "without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party").[11]

## **Conclusion**

For the reasons set forth above, Hill's motion to set aside a declaration of forfeiture (Docs. 249, 253) is GRANTED without prejudice. Hill's motion for the return of seized property (Doc. 255) is GRANTED in part and DENIED in part. The Government shall make good faith, reasonable efforts to return any additional currency seized incident to the May 2012 arrest. The Government shall then certify in writing to the Court and to Mr. Hill its efforts in this respect.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 13th day of August, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

---

[11] Section 983(e)(2) allows the federal government to begin a subsequent proceeding "[n]otwithstanding the expiration of any applicable statute of limitations." 18 U.S.C. § 983(e)(2)(A).